Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

EFILED

# CIVIL ACTION COVER SHEET

DOCKET NUMBER: 2685CV01101C

Massachusetts Trial Court
Superior Court

COUNTY

| | |
|---|---|
| **Plaintiff** Kristen White | **Defendant:** Assumption University |
| ADDRESS: c/o RGRM | ADDRESS: 500 Salisbury Street |
| 446 Main Street, Suite 1503 | Worcester, MA 01605 |
| Worcester, MA 01604 | |
| **Plaintiff Attorney:** Maureen A. Carroll | **Defendant:** Gregory S. Weiner |
| ADDRESS: 446 Main Street, Suite 1503 | ADDRESS: 376 Bailey Road |
| Worcester, MA 01604 | Holden, MA 01520 |
| | |
| BBO: 710820 | |

**TYPE OF ACTION AND TRACK DESIGNATION (see instructions section on next page)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B22 | Discrimination in Employment | F | ☒ YES ☐ NO |

***If "Other" please describe:**

**Is there a claim under G.L. c. 93A?** ☐ YES ☒ NO

**Is there a class action under Mass. R. Civ. P. 23?** ☐ YES ☒ NO

**STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. (Note to plaintiff: for this form, do not state double or treble damages; indicate single damages only.)

**TORT CLAIMS**

A. Documented medical expenses to date

1. Total hospital expenses
2. Total doctor expenses
3. Total chiropractic expenses
4. Total physical therapy expenses
5. Total other expenses (describe below)

Subtotal (1-5): $0.00

B. Documented lost wages and compensation to date $160,000.00

C. Documented property damages to date

D. Reasonably anticipated future medical and hospital expenses

E. Reasonably anticipated lost wages $480,000.00

F. Other documented items of damages (describe below) $160,000.00

Discrimination; Retaliation; Wage Act violations; Damage to reputation; relocation expenses; attorney's fees and costs

TOTAL (A-F): $800,000.00

G. Briefly describe plaintiff's injury, including the nature and extent of the injury:

**CONTRACT CLAIMS**

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).

| Item # | Detailed Description of Each Claim | Amount |
|---|---|---|
| 1. | | |
| | Total | |

Signature of Attorney/Self-Represented Plaintiff: X Date: July 20, 2026

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION UNDER S.J.C. RULE 1:18(5)**

I hereby certify that I have complied with requirements of Rule 5 of Supreme Judicial Court Rule 1:18: Uniform Rules on Dispute Resolution, requiring that I inform my clients about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney: X Date: July 20, 2026

Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

# CIVIL ACTION COVER SHEET INSTRUCTIONS — SELECT A CATEGORY THAT BEST DESCRIBES YOUR CASE*

**AC Actions Involving the State/Municipality †***

AA1 Contract Action involving Commonwealth, Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth, Municipality, MBTA, etc. (A)
AC1 Real Property Action involving Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth, Municipality, MBTA, etc. (A)
AE1 Administrative Action involving Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A05 Consumer Revolving Credit - M.R.C.P. 8.1 (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal Affairs of Entities (A)
BA3 Liability of Shareholders, Directors, Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

* See Superior Court Standing Order 1-88 for an explanation of the tracking deadlines for each track designation: F, A, and X. On this page, the track designation for each case type is noted in parentheses.

†* Choose this case type if ANY party is the Commonwealth, a municipality, the MBTA, or any other governmental entity UNLESS your case is a case type listed under Administrative Civil Actions (AA).

‡ Choose this case type if ANY party is an incarcerated party, UNLESS your case is a case type listed under Administrative Civil Actions (AA) or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c. 231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party ‡**

PA1 Contract Action involving an Incarcerated Party (A)
PB1 Tortious Action involving an Incarcerated Party (A)
PC1 Real Property Action involving an Incarcerated Party (F)
PD1 Equity Action involving an Incarcerated Party (F)
PE1 Administrative Action involving an Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal Injury/Property Damage (F)
B04 Other Negligence - Personal Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical (A)
B07 Malpractice - Other (A)
B08 Wrongful Death - Non-medical (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Summary Process (Real Property)**

S01 Summary Process - Residential (X)
S02 Summary Process - Commercial/ Non-residential (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10, § 28 (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E (X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency, G.L. c. 30A (X)
E03 Certiorari Action, G.L. c. 249, § 4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G.L. c. 93, § 9 (A)
E07 Mass Antitrust Act, G.L. c. 93, § 8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149, §§ 29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12, § 11H (A)
E24 Appeal from District Court Commitment, G.L. c.123, § 9(b) (X)
E94 Forfeiture, G.L. c. 265, § 56 (X)
E95 Forfeiture, G.L. c. 94C, § 47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only, G.L. c. 231, § 60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A, § 12 (X)
E14 SDP Petition, G.L. c. 123A, § 9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c. 6, § 178M (X)
E27 Minor Seeking Consent, G.L. c.112, § 12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES ☐ NO |

## STATEMENT OF DAMAGES REQUIRED BY G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF** — On the face of the Civil Action Cover Sheet (or on attached additional sheets, if necessary), the plaintiff shall state the facts on which the plaintiff relies to determine money damages. A copy of the completed Civil Action Cover Sheet, including the statement concerning damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or self-represented litigant.**

**DUTY OF THE DEFENDANT** — If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with the defendant's answer a statement specifying the potential damages which may result if the plaintiff prevails.

A true copy by photostatic process
Attest:
Asst. Clerk

**A CIVIL ACTION COVER SHEET MUST BE FILED WITH EACH COMPLAINT. IF THIS COVER SHEET IS NOT FILLED OUT THOROUGHLY AND ACCURATELY, THE CASE MAY BE DISMISSED.**

Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

$275

EFILED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV01101C

KRISTEN WHITE,

Plaintiff

v.

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,

Defendants

**COMPLAINT AND DEMAND FOR JURY TRIAL**

2~

## INTRODUCTION

In the three years that Kristen White worked for Assumption University, she was promoted twice, given raises, trusted with increasingly mission-critical responsibilities and made a member of the President's "cabinet". Yet in 2025, Ms. White was the first in a quick succession of high-level women who were terminated after pushing back against policies and practices championed by the University President, Gregory Weiner. Specifically, Mr. Weiner encouraged student drinking on campus and instructed staff and University police to avoid interfering. Mr. Weiner's policies and practices not only violated existing University policies and state laws, but also endangered students by leading inevitably to dangerous levels of alcohol consumption and an increase in sexual assaults on campus.

At Mr. Weiner's behest, the University terminated Ms. White for advocating against his directives in favor of existing policies intended to protect students. Since Ms. White's termination, the University has terminated two other high-level women for voicing similar concerns. The University's termination of these women was motivated not only by discriminatory bias but also

by a desire to silence them, as their advocacy did not "align" with Mr. Weiner's vision of making the University an undergraduate party school.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Kristen White ("Ms. White") is a Massachusetts resident who was a full-time employee of Assumption from 2022 until June 24, 2025.

2. Defendant Assumption University ("Assumption") is a private university with its principal office located at 500 Salisbury Street, Worcester, Massachusetts.

3. Defendant Gregory S. Weiner ("Mr. Weiner") is a Massachusetts resident and the president of Assumption and has an address of 376 Bailey Road, Holden, Massachusetts.

4. Massachusetts has jurisdiction over Assumption pursuant to M.G.L. c. 233A §§2 and 3.

5. Massachusetts has jurisdiction over Mr. Weiner pursuant to M.G.L. c. 233A §2.

6. This Court has jurisdiction over this matter pursuant to M.G.L. c. 212 §§3 and 4.

7. Venue is appropriate because all of the parties reside in or do business in Worcester County.

**FACTS**

8. Assumption is a co-ed university located in Worcester, Massachusetts with a campus that is open to both undergraduate and graduate students.

9. Assumption is subject to Title IX of the Education Amendments of 1972, which prohibits discrimination on the basis of sex in education programs, including retaliation for reporting misconduct and discrimination.

10. Assumption hired Ms. White to be its Director of Residential Life in October 2022.

11. Assumption promoted Mr. Weiner to be its President in or about October 2022.

12. In January of 2024, Assumption promoted Ms. White to Interim Vice President for Student Affairs ("VPSA").

13. Later in 2024, Assumption promoted Ms. White to VPSA.

14. As Interim VPSA and thereafter, Ms. White reported directly to Mr. Weiner.

15. Ms. White continued in this position until her termination on June 24, 2025.

16. Assumption has policies and community standards in place for the safety and welfare of its students, including policies concerning alcohol use.

17. Mr. Weiner and Ms. White both had a responsibility to uphold these policies.

18. Mr. Weiner has a history of disregarding wholesale any concerns brought up by staff regarding alcohol misuse and abuse on campus.

19. On occasion, Mr. Weiner directly undermined Ms. White's authority in addressing drinking behavior with students.

20. When Ms. White spoke up about Mr. Weiner's apparent disregard for student safety, he called this "misalignment".

21. Ms. White came to find that "misalignment" was a term Mr. Weiner used specifically and consistently to describe the opinion of any woman when she disagreed with him.

22. Mr. Weiner instructed Assumption University police officers[1] and staff to "treat students like adults" whenever discussion turned to student alcohol use.

23. Mr. Weiner's posture of leniency and direct communication with the student body encouraged alcohol use by students.

24. Due to the frequency and severity of incidents caused by student alcohol use, Ms. White brought up her concerns about alcohol use and abuse on campus to Mr. Weiner on a regular basis.

25. Mr. Weiner dismissed Ms. White's concerns about alcohol use on campus and tried to steer her away from enforcement.

26. Mr. Weiner persisted in his goal to dissuade Ms. White from enforcing rules about alcohol use on campus even after Ms. White showed Mr. Weiner a video in February 2025, showing students carrying a dangerously intoxicated freshman upstairs to her dorm and abandoning her.

27. Fortuitously, an older student observed this and likely saved this freshman's life by getting help, as she ultimately required intubation.

28. There is a "Valley" area of campus, where Assumption students live in apartment-style housing.

29. Weekend parties frequently took place in a courtyard-like common area in the Valley, where hundreds of students would gather and drink for hours while Residential Life staff watched from a small distance.

[1] Assumption's Public Safety Office is comprised of support staff and on-campus police who are duly sworn, POST certified police officers employed by Assumption and not affiliated with the Worcester Police Department ("WPD").

30. In contravention of established University policy, Mr. Weiner directed AUPD and Residential Life staff to be present at parties and available, but not to take proactive measures to address conduct before a problem occurred.

31. As a direct and foreseeable consequence of Mr. Weiner's instructions, Assumption students flouted the University's alcohol policies publicly and proudly.

32. On multiple occasions, Ms. White explicitly mentioned her concern that Mr. Weiner's instructions placed female students disproportionately at risk.

33. Mr. Weiner's policies led directly to overconsumption of alcohol by students to the point of hospitalization and contributed to other incidents on campus, including sexual assaults.

**Alcohol Abuse and Sexual Assaults Involving Assumption Students**

34. In addition to providing advocacy, advice and assistance to students who reported sexual misconduct, Student Affairs was responsible for collecting data on sexual assaults involving students.

35. In compliance with the Jeanne Clery Disclosure of Campus Security Policy and Campus Crime Statistics Act and Title IV of the Higher Education Act of 1965, Assumption reports crime statistics on an annual basis by October 1st (the "Annual Security Report").

36. The data Assumption has reported makes clear that since 2022, the university has had a serious problem with overconsumption of alcohol on campus and related instances of misconduct and sexual assault.

37. The 2023 Annual Security Report cites that in the 2023-2024 academic year there was one rape, one instance of fondling, one aggravated assault and sixty-seven liquor law violations on campus.

38. The 2024 Annual Security Report cites that in the 2024-2025 academic year there were four rapes, seven instances of fondling, one aggravated assault and eighty-one liquor law violations on campus.

39. In the 2024-2025 academic year, between August 26, 2024 and May 5, 2025: a) at least ten students were transported by ambulance from campus due to alcohol consumption; b) one student was placed into protective custody while heavily inebriated; c) ambulance personnel had to intubate one student prior to transport; and d) Student Affairs staff had to supervise at least two more students in the rescue position while awaiting an ambulance because they could not maintain open airways while vomiting in an intoxicated, semi-conscious state.

40. In 2024 and 2025, young women who reported assaults to Student Affairs staff often stated that they had been at a party prior to or at the time of their assault.

41. In April 2025, female students reported to Student Affairs staff that young women's drinks were being spiked at parties on campus.

42. In April 2025, female students also reported to Student Affairs staff that the male students made exceptionally strong drinks, including drinks referred to by students as "jungle juice," intended specifically for the young women.

43. During interviews in Title IX investigations in the 2024-2025 school year, multiple female students reported that they felt unsafe on weekends due to the party culture.

44. In one incident in 2024 that led to criminal charges, a man brought a heavily intoxicated Assumption student from a party to an on-campus apartment and raped her.

45. In another incident in 2024 that led to criminal charges, an Assumption student was at a party when a male student placed his hands around her neck.

46. Early in 2025, even as Ms. White and others expressed concern that the party culture on campus was leading directly to sexual assaults and hospitalizations, Mr. Weiner made it clear to students and staff that he would not support staff enforcing established policies regarding alcohol use on campus.

47. Of the sexual assaults reported in 2024 and 2025, two included assaults on female students involving the men's and women's tennis teams.

48. Student Affairs staff discovered during the Spring 2025 investigations into the tennis team assaults that they had occurred in conjunction with extreme alcohol use at parties known as "formals".

49. "Formals" were on-campus semi-formal parties hosted by athletic teams and student clubs and organizations.

50. Students informed Ms. White that at formals, students would be tied by the wrist to one another and not released until they had consumed an entire bottle of wine.

51. In a bid to protect students, Ms. White decided to ban formals in March of 2025 due to the risk presented by the overconsumption of alcohol.

52. April is Sexual Assault Awareness month; this timing combined with the information Student Affairs had received about formals led to increased messaging to students.

53. This messaging included additional educational materials being published and the contact information for Student Affairs being shared more frequently across additional platforms as well as outreach made directly to female students.

54. On April 24, 2025, after receiving student feedback, Ms. White and others from Student Affairs and AUPD met with students to review material educating students about alcohol use and policies.

55. Mr. Weiner later told Ms. White that students remained "confused" about policies.

56. Ms. White responded by telling Mr. Weiner that the students feigned confusion because they discovered it allowed them to push Mr. Weiner to make additional changes in favor of leniency toward alcohol.

**Spring Weekend and Messaging from University President Greg Weiner**

57. Ms. White's ban on formals came close to the close of the 2025 school year.

58. Assumption has traditionally held an annual party, "Spring Weekend", to celebrate the end of the school year.

59. In advance of Spring Weekend, on or about April 30, 2025, Mr. Weiner met with Ms. White and four other staff members, all women, to discuss alcohol consumption and "perception".

60. After they shared concern over the drinking culture on campus, Mr. Weiner told those present that their approaches and perspectives about student alcohol consumption were "crusted in cynicism" and that they were insufficiently open-minded.

61. Ms. White and the other four women all had expertise and experience in their respective fields, and were ignored, insulted and demeaned by Mr. Weiner, who maintained his disregard for the danger the party culture at Assumption posed for students.

62. Upon information and belief, following this meeting, Mr. Weiner told a male executive that the meeting was a "disaster" and falsely stated that one of the women was "close to tears".

63. Upon information and belief, Mr. Weiner was displeased that none of the women agreed to admit that they were "crusted with cynicism".

64. Mr. Weiner later told Ms. White that he thought the comment about cynicism would give everyone a "fresh start" and did not see how it would offend.

65. Upon information and belief, on or about the same day as this meeting, Mr. Weiner asked.Assumption's general counsel about his authority to recategorize areas of campus to allow open containers.

66. The University's general counsel had previously told Mr. Weiner that Assumption lacked such authority as a matter of law.

67. Shortly after the April 30th meeting, Mr. Weiner released a video to students in which he held a whiffle ball bat and told students he wanted them out and on campus celebrating Spring Weekend.

68. Mr. Weiner has attempted to make the whiffle ball bat his "trademark" as a "cool" president and has used it in videos and at Assumption ceremonies.

69. In his April 30, 2025 video, Mr. Weiner announced that University staff would only interject if students were doing something "unsafe".

70. Despite being advised to do so by Ms. White, AUPD and Chief Marketing Officer (CMO) Marisa Gregg, Mr. Weiner did not include the term "illegal" alongside "unsafe" in his video, implicitly condoning underage drinking and open containers.

71. Mr. Weiner's April 30th video undermined Assumption policies and Ms. White's messaging to students and led many students to believe the ban on formals was lifted.

72. During Spring Weekend, Mr. Weiner was filmed in another video, this time hitting a whiffle ball while surrounded by discarded alcohol containers that littered the ground.

73. Mr. Weiner posted this second video to his social media account with the caption of "promises made, promises kept".

74. Assumption later reposted this video to the school's social media accounts with a different caption, placed to cover the discarded alcohol containers.

75. Mr. Weiner's interference with Residential Life staff made it all but impossible for them to enforce policies when the students knew Mr. Weiner would undermine them.

76. During Spring Weekend 2025, Residential Life staff stopped numerous students with open containers of alcohol in areas where students know open containers are prohibited, only to be told by students that Mr. Weiner had just been with them and that he was "fine" with the open containers.

77. Mr. Weiner's messaging went beyond soliciting the approval of undergraduate students and posting whiffle ball videos.

78. On October 19, 2024, at the President's Council Dinner, Mr. Weiner was extoling the accomplishments of two of the university's women's sports teams when he suddenly pivoted to mention the men's football team.

79. Mr. Weiner called out to an alumnus present and stated:

"What happened on the bus, stays on the bus, for my sake as much as yours."

80. Afterward, several attendees approached Ms. White, regarding this statement, having found it strange, inappropriate and disconcerting.

81. To Ms. White, Mr. Weiner's statement supported her observation that while he might know about misconduct, he would look the other way for his own benefit.

**Ms. White's Termination**

82. Mr. Weiner never gave Ms. White any written performance review or feedback.

83. In January 2025, Ms. White asked Mr. Weiner for a performance evaluation.

84. Mr. Weiner declined to provide Ms. White with a performance evaluation in January 2025 and said he wanted to conduct it with other yearly reviews in May that year.

85. Mr. Weiner provided informal feedback to Ms. White during monthly one-on-ones and ad hoc at executive level meetings, including "cabinet" meetings

86. During a one on one with Ms. White in March 2025, Mr. Weiner asked her what the hardest part of her job was.

87. In answer, Ms. White told Mr. Weiner the hardest part of her job was the amount of time she spent on alcohol issues.

88. Mr. Weiner responded by telling Ms. White that if he did not want her in that position, she would be gone.

89. Ms. White took this as a warning to not interfere with Mr. Weiner's agenda of tolerating alcohol abuse on campus, even if it meant not fulfilling her professional duties.

90. Mr. Weiner had a habit of soliciting feedback from students and not allowing other staff to be present.

91. Mr. Weiner said he did this so that students could feel that they could "speak freely".

92. After one such "listening tour", Mr. Weiner reported to Ms. White that not a single student he spoke to could name a member of Student Affairs staff they trusted or felt comfortable going to.

93. In fact, students regularly came to Ms. White and her staff to express complaints or seek help with problems.

94. After Mr. Weiner's report, a student came into Ms. White's office and told her how happy she had been to name Ms. White specifically when Mr. Weiner had asked that question.

95. On another occasion, Mr. Weiner reported back from a "listening tour" that a resident assistant (RA) had complained that Marcie Harrington, Residential Life staff member, could not identify a single RA by name.

96. In fact, the RA Mr. Weiner identified was a student that Ms. White knew had a close rapport with Ms. Harrington and spent time in Ms. Harrington's office multiple times a week.

97. After Ms. White pointed this out, Mr. Weiner retracted his statement and stated that he must have been "misremembering".

98. Mr. Weiner would routinely subvert and misrepresent what students stated when he was soliciting feedback from them.

99. Ms. White was distressed by the lack of support, the undermining of her position and the gaslighting that came with Mr. Weiner's misrepresentations, which he characterized as "misremembering".

100. In June 2025, during a one-on-one, Mr. Weiner started the meeting by asking Ms. White if she wanted to "address the elephant in the room."

101. Ms. White told Mr. Weiner she did not know what he meant.

102. Mr. Weiner told her he believed that they were not "aligned" and asked her how she could "get on board" with treating the students like adults".

103. Mr. Weiner told Ms. White that this topic of "alignment" was apart and separate from any performance review.

104. Ms. White told Mr. Weiner that she often felt pressured to shelve her experience and values when Mr. Weiner created an environment in which she was jeopardizing her principles to "align" with him.

105. During a follow-up meeting on June 9, 2025, Ms. White told Mr. Weiner she was concerned that a student would eventually die on campus.

106. During this follow-up, Ms. White made recommendations regarding how to respond to student behavior around alcohol that would "align" with Mr. Weiner's vision for Assumption while following established university policy.

107. Ms. White recommended that Assumption no longer have staff stand outside the Valley-area apartments for hours on weekend evenings.

108. Ms. White opined that if Mr. Weiner wanted to allow students to manage themselves and use that space as a "backyard", as he had proposed, they could do that, but the University needed to adjust staff expectations.

109. Ms. White also raised the concern that if the university got a reputation as a party school, it could impact who they could attract in terms of staffing.

110. Ms. White suggested that instead of watching parties and witnessing violations of community standards without being allowed to do anything about it, RAs instead follow current Assumption policies and conduct rounds with radios so they can alert AUPD to any emergencies.

111. Ms. White told Mr. Weiner that this approach both met Mr. Weiner's edict to let students self-manage and followed current policies, but gave her concern over slow response time given the degree of overconsumption.

112. On June 24, 2025, less than three weeks after she expressed her concerns about student safety, Assumption terminated Ms. White's employment.

113. Assumption did not pay Ms. White her final paycheck or accrued vacation pay until July 1, 2025, nearly a week after her June 24, 2025 termination.

114. Mr. Weiner sent an email to the student body that began by stating that the university needed to change its tone toward students and earn their trust back and ended with saying that Ms. White was no longer with the university.

115. This email gave the tone that Ms. White's separation from the university was connected to "earning back" trust from the students.

116. Upon her termination on June 24, 2025, Assumption informed Ms. White that she would be required to move out of the house she had been renting from the University.

117. As a result of her family's sudden need to relocate, Ms. White had to register her children in a new and unfamiliar school district.

118. These changes caused Ms. White's children extreme distress, and she suffered emotional distress herself as a result.

**Mr. Weiner's Disparate Treatment of Women**

119. The way in which Ms. White was terminated, and the deceptive email are a departure from how men were treated after they were terminated.

120. It had been previously discussed among staff that the terminations of men were handled differently from those of women.

121. In the course of his brief tenure as President, Mr. Weiner has terminated six executive-level women as well as the female AUPD Chief of Police.

122. In May 2023, Mr. Weiner terminated Maureen Halley, who had been serving as Assumption's Chief Marketing Officer when Ms. White's employment began.

123. In January 2024, Mr. Weiner terminated Dr. Laura Pena Pantano, who had been serving as VPSA.

124. Upon information and belief, Mr. Weiner had previously terminated Deb Cady Melzer, the VPSA and Dean of Students before Dr. Pantano.

125. In August 2024, Mr. Weiner terminated Jill Abrahams, the VP for University Advancement.

126. Following its termination of Ms. White, on September 4, 2025, Assumption was put on notice that Ms. White would be making a complaint for discrimination to the Massachusetts Commission Against Discrimination (the "MCAD").

127. That letter outlined Mr. Weiner's deliberate indifference to student sexual assaults, his contributions to a hostile workplace and the other counts delineated herein.

Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

128. The letter also named other leaders at Assumption who stood against Mr. Weiner's alcohol policies, including Assumption's Chief Counsel Christina Graziano and AUPD Chief of Police Rebecca Gagne.

129. Shortly after Mr. Weiner received Ms. White's demand letter, he terminated Christina Graziano and Rebecca Gagne.

130. In contrast with his terminations of six women in leadership positions at the University, Mr. Weiner has terminated just three men in leadership during his tenure.

131. Mr. Weiner treated at least two of the male employees he terminated more favorably than he did the women he terminated, giving them advance notice.

132. On campus, it was widely discussed among staff that Mr. Weiner did not like being challenged by women.

133. Mr. Weiner spoke and interacted with men differently than he did women.

134. Mr. Weiner frequently made comments about his female colleagues' emotional states, referring to disagreements between women as "catfights".

135. Mr. Weiner had limited tolerance for women who disagreed with him.

136. Despite Ms. White's expertise in student affairs, alcohol, residential life and student conduct, Mr. Weiner continuously undermined and publicly demeaned her.

137. Mr. Weiner brought up instances of student conduct to the cabinet and asked what decision others would have made.

138. Of all cabinet members, only Ms. White and one other had a background in student conduct, which Ms. White felt made such conversations incredibly inappropriate.

139. The crowdsourcing of alternate opinions after Ms. White had taken action was embarrassing for her and frustrated her job of independently managing her department.

140. Conversely, Mr. Winer never asked the cabinet to opine on a decision that was made related to finance or enrollment, departments headed by men.

141. Mr. Weiner's derogatory comments to and about women are well-known by those at Assumption.

142. His inflammatory rhetoric and disparate treatment of women underscore the disrespect he has for the women with whom he works.

143. Mr. Weiner holds the safety of the young women on campus in similarly low regard.

144. The campus Annual Security Report is due each October, and several departments coordinate to ensure its complete and timely submission.

145. Among those critical to the completion of the Report are the AUPD, the Title IX coordinator and Student Affairs, who each provide data from the prior year.

146. Chief Gagne, Attorney Graziano and Ms. White, respectively, were in charge of those components.

147. These three women were terminated or placed on leave before the Annual Security Report was completed.

148. Upon information and belief, Assumption encountered difficulty coming to final numbers for the 2024/ 2025 academic year report for this reason.

149. Mr. Weiner has sold out the safety of the female student population for his infatuation with being liked by undergraduates and with making Assumption into a party school.

150. Mr. Weiner has publicized his blatant contempt for common sense, Assumption standards and Massachusetts law surrounding student alcohol use and abuse.

151. This reality cannot be divorced from the serious threat of gender-based violence against the young women attending Assumption.

152. Mr. Weiner's position imposes on him a responsibility for these young women and a duty to protect them.

153. Sexual assaults on students have risen during his tenure as President and have been committed within the culture of drinking games and alcohol use that permeates campus with Mr. Weiner's encouragement.

154. Mr. Weiner's irresponsible promotion of the drinking culture on campus and his attempts to drive a wedge between students and the women working in Residential Life increase the clear and present threat of violence against female students.

155. Ms. White has complied with all requirements prior to the filing of this Complaint.

**<u>COUNT I</u>**
**Discrimination on the Basis of Sex in Violation of M.G.L. c. 151B § 4(1)**
*Applies to Assumption*

156. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

157. As described in the foregoing paragraphs, Assumption, through its agents and employees' actions and omissions, discriminated against Ms. White in the terms, conditions and privileges of her employment in violation of M.G.L. c. 151B § 4(1).

158. As a result, Assumption has caused Ms. White to incur substantial damages, including but not limited to lost wages, moving costs and attorney's fees and costs.

Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

159. Pursuant to M.G.L. c. 151B § 9, the Court should find Assumption liable to Ms. White for her damages and for punitive damages as well as attorneys' fees and costs.

**COUNT II**
**Retaliation in Violation of M.G.L. c. 151B § 4(4)**
*Applies to Both Defendants*

160. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

161. As described in the foregoing paragraphs, Assumption through Mr. Weiner, terminated and discriminated against Ms. White for opposing policies forbidden under the law in violation of M.G.L. c. 151b §4(4).

162. As a result, the Defendants have caused Ms. White to incur substantial damages, including but not limited to lost wages, moving costs and attorney's fees and costs.

163. Pursuant to M.G.L. c. 151B § 9, the Court should find the Defendants liable to Ms. White for her damages and for punitive damages as well as attorneys' fees and costs.

**COUNT III**
**Coercion, Intimidation and Interference in Violation of M.G.L. c. 151B § 4(4A)**
*Applies to Both Defendants*

164. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

165. As described in the foregoing paragraphs, Mr. Weiner and Assumption, through its agents and employees, interfered with Ms. White's right to be free from discrimination in terms, conditions or privileges of employment and from retaliation for protected activities in violation of M.G.L. c. 151b §4(4A).

166. As a result of the actions of Mr. Weiner and Assumption, through its agents and employees, Ms. White has incurred substantial damages, including but not limited to lost wages, moving costs and attorney's fees and costs.

167. Pursuant to M.G.L. c. 151B § 9, the Court should find the Defendants liable to Ms. White for her damages and for punitive damages as well as attorneys' fees and costs.

**COUNT IV**
**Aiding and Abetting Acts in Violation of M.G.L. c. 151B § 4(5)**
*Applies to Both Defendants*

168. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

169. As described in the foregoing paragraphs, Mr. Weiner and Assumption, through its employees and agents, aided and abetted the various violations of MG.L. c. 151B.

170. As a result of Mr. Weiner's actions, Ms. White has incurred substantial damages, including but not limited to lost wages, moving costs and attorney's fees and costs.

171. Pursuant to M.G.L. c. 151B § 9, the Court should find the Defendants liable to Ms. White for her damages and for punitive damages as well as attorneys' fees and costs.

**COUNT V**

**Retaliation in Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681(a)**

*Applies to Both Defendants*

172. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

173. As described in the foregoing paragraphs, Mr. Weiner subjected Ms. White to retaliation in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a).

174. As a result of Mr. Weiner's retaliation, Ms. White has suffered extreme emotional distress, lost wages and attorney's fees and costs.

175. Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), Mr. Weiner and Assumption are liable to Ms. White for her damages and attorney's fees and costs.

**COUNT VI**

**Violation of the Wage Act pursuant to M.G.L. c. 149 §148**

*Applies to Both Defendants*

176. Ms. White repeats the foregoing paragraphs as if fully set forth herein.

177. Ms. White was terminated from her employment with Assumption by Mr. Weiner on June 24, 2025.

178. Ms. White was not paid her final paycheck or accrued, unpaid vacation time until July 1, 2025.

179. Pursuant to M.G.L. c. 149 § 150, Assumption is liable to Ms. White for treble damages under the Massachusetts Wage Act as a result of its failure to pay Ms. White her accrued vacation time on the day of her termination, as well as for her attorneys' fees and costs incurred in bringing this action.

180. As Assumption's President, Mr. Weiner is personally liable to Ms. White for treble damages under the Massachusetts Wage Act as a result of its failure to pay her accrued vacation time on the day of her termination, as well as for her attorneys' fees and costs incurred in bringing this action.

WHEREFORE, the Plaintiff respectfully asks the Court to for the following relief:

A. An award of emotional distress damages arising from Counts I through IV;
B. An award of punitive damages arising from Counts I through IV;
C. An award of double damages arising from Count VI;
D. An award of compensatory damages arising from Count V;

E. An award of her reasonable attorneys' fees and costs incurred; and
F. Such other and further relief as the Court deems appropriate.

**THE PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL ISSUES SO TRIABLE.**

**Verification**

I, Kristen White, hereby declare under the pains and penalties of perjury that I have read the foregoing document and that the allegations in it are true to the best of my knowledge, information and belief.

Subscribed and sworn to this 20th day of July, 2026:

Kristen White

Respectfully Submitted,
Plaintiff, Kristen White
By her Attorney,

*/s/ Maureen A. Carroll*

Maureen A. Carroll
BBO No.: 710820
Rudolf, Smith, Griffis and Ruggieri, LLP
446 Main Street, Suite 1503
Worcester, MA 01608
Telephone: (508) 425-6330
Fax: (508) 536-0834
carroll@rudolfsmith.com

Dated: July 20, 2026

copy by photostatic process
Attest:
Asst. Clerk

# eSignature Details

**Signer ID:** **CLSASvoyJD9zrMfXwUduXm2i**
Signed by: Kristen Marie White
Sent to email: kristen.m.white87@gmail.com
IP Address: 146.75.253.252
Signed at: Jul 20 2026, 10:33 am EDT

Date Filed 7/20/2026 4:17 PM
Superior Court - Worcester
Docket Number

EFILED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV01101C

KRISTEN WHITE,

Plaintiff

v.

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,

Defendants

3~

**NOTICE OF APPEARANCE FOR THE PLAINTIFF**

The undersigned counsel hereby gives notice of their appearance in this matter on behalf of Plaintiff, Kristen White.

Respectfully submitted,
Plaintiff, Kristen White
By her Attorney,

Dated: July 20, 2026

*/s/ Maureen A. Carroll*

Maureen A. Carroll
BBO No.: 710820
Rudolf, Smith, Griffis & Ruggieri
446 Main Street, Suite 1503
Worcester, MA 01608
p. (508) 425-6330
f. (508) 536-0834
carroll@rudolfsmith.com

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 7/21/2026 10:48 AM
Superior Court - Worcester
Docket Number 2685CV01101

E-FILED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss

WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV1101C

KRISTEN WHITE,

Plaintiff

v.

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,

Defendants

4$

**PLAINTIFF'S MOTION TO APPOINT SPECIAL PROCESS SERVER UNDER RULE 4C OF THE MASSACHUSETTS RULES OF CIVIL PROCEDURE**

The Plaintiff moves this Honorable Court to appoint FRANCIS J. TRAPASSO AND/OR HIS/HER AGENTS, a Constable/Process Server and a qualified and knowledgeable person in the service of court process and not a party to the action, a disinterested person who is over 18 to be specially appointed by the court to serve the process in this action under the provision of Rule 4C of the Massachusetts Rules of the civil procedure in order to assure a substantial savings in time.

Respectfully submitted,
Plaintiff, Kristen White
By her Attorney,

Dated: July 21, 2026

*/s/ Maureen A. Carroll*

Maureen A. Carroll
BBO No.: 710820
Rudolf, Smith, Griffis & Ruggieri
446 Main Street, Suite 1503
Worcester, MA 01608
p. (508) 425-6330
f. (508) 536-0834
carroll@rudolfsmith.com

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 7/27/2026 1:57 PM
Superior Court - Worcester
Docket Number 2685CV01101

E-FILED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss.

WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV01101

KRISTEN WHITE,
Plaintiff,

v.

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,
Defendant.

**NOTICE OF APPEARANCE**

5@

Please enter the appearance of Timothy P. Van Dyck as counsel for Defendant, Assumption University and Gregory S. Weiner in the above-captioned matter.

Respectfully Submitted,

Assumption University and
Gregory S. Weiner,

By Its Attorneys,

Timothy P. Van Dyck (BBO #548347)
Benjamin Hinks (BBO #706662)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: 617-757-6500
E-mail: tvandyck@bowditch.com
bhinks@bowditch.com

Date: July 27, 2026

Date Filed 7/27/2026 1:57 PM
Superior Court - Worcester
Docket Number 2685CV01101

**CERTIFICATE OF SERVICE**

I, Timothy P. Van Dyck, hereby certify that I have served a copy of the foregoing on the following by first class mail, this 27th day of July 2026, to:

Maureen A. Carroll, Esq.
Rudolf, Smith, Griffis & Ruggieri
446 Main Street, Suite 1503
Worcester, MA 01608

Timothy P. Van Dyck

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 7/27/2026 1:57 PM
Superior Court - Worcester
Docket Number 2685CV01101

E-FILED

COMMONWEALTH OF MASSACHUSETTS

WORCESTER, ss. WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV01101

| | |
|---|---|
| KRISTEN WHITE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ASSUMPTION UNIVERSITY and GREGORY S. WEINER, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**NOTICE OF APPEARANCE**

6@

Please enter the appearance of Timothy P. Van Dyck as counsel for Defendant, Assumption University and Gregory S. Weiner in the above-captioned matter.

Respectfully Submitted,

Assumption University and
Gregory S. Weiner,

By Its Attorneys,

Timothy P. Van Dyck (BBO #548347)
Benjamin Hinks (BBO #706662)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: 617-757-6500
E-mail: tvandyck@bowditch.com
bhinks@bowditch.com

Date: July 27, 2026

Date Filed 8/11/2026 11:15 AM
Superior Court - Worcester
Docket Number 2685CV01101

E-FILED

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

WORCESTER, ss. CIVIL ACTION NO. 2685CV01101 C

KRISTEN WHITE,
Plaintiff,

v.

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,
Defendants.

**ACCEPTANCE OF SERVICE OF**
**DEFENDANTS ASSUMPTION UNIVERSITY AND GREGORY S. WEINER**

7+

I, Benjamin J. Hinks, hereby certify that I am counsel to the above-named Defendants, Assumption University and Gregory S. Weiner, and that on the 23rd day of July, 2026, I accepted service of the following documents in the above-captioned matter and waive service pursuant to Mass R, Civ. P. 4 on behalf of the Defendants, Assumption University and Gregory S. Weiner: (1) Copy of Summonses; (2) Verified Complaint; (3) Civil Action Cover Sheet and Tracking Order; and (3) Notice of Appearance of Plaintiff's counsel.

All of Defendants' rights, remedies, claims, defenses, or objections, whether arising by agreement, or at law or at equity, are reserved.

Date Filed 8/11/2026 11:15 AM
Superior Court - Worcester
Docket Number 2685CV01101

Respectfully submitted,

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,

By Their Attorneys,

Timothy P. Van Dyck (BBO #548347)
Benjamin Hinks (BBO #706662)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: (617) 757-6500

August 11, 2026

## CERTIFICATE OF SERVICE

I, Benjamin J. Hinks, hereby certify that I have served a copy of the foregoing on counsel for Plaintiff by email, this 11th day of August 2026.

Benjamin J. Hinks

A true copy by photostatic process
Attest:
Asst. Clerk

Date Filed 8/19/2026 10:17 AM
Superior Court - Worcester
Docket Number 2685CV01101

COMMONWEALTH OF MASSACHUSETTS

E-FILED

WORCESTER, ss.

WORCESTER SUPERIOR COURT
DOCKET NO. 2685CV01101

| | |
|---|---|
| KRISTEN WHITE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ASSUMPTION UNIVERSITY and GREGORY S. WEINER, | ) |
| | ) |
| Defendants. | ) |
| | ) |

(8)

**NOTICE OF FILING NOTICE OF REMOVAL OF STATE ACTION TO THE U.S. DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

Defendants Assumption University and Gregory S. Weiner, pursuant to 28 U.S.C. §§ 1331, 1367, 1441 and 1446, filed with the Clerk of the United States District Court for the District of Massachusetts, a Notice of Removal, a copy of which is attached hereto and incorporated herein as Exhibit 1.

Please take further notice that, pursuant to 28 U.S.C. § 1446, the filing of this Notice effects the removal of this action to the United States District Court for the District of Massachusetts.

Respectfully Submitted,

ASSUMPTION UNIVERSITY and
GREGORY S. WEINER,

By Their Attorneys,

*/s/ Benjamin J. Hinks*

Timothy P. Van Dyck (BBO #548347)
Benjamin Hinks (BBO #706662)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: 617-757-6500
E-mail: tvandyck@bowditch.com
bhinks@bowditch.com

Date: August 19, 2026

**CERTIFICATE OF SERVICE**

I, Benjamin J. Hinks, hereby certify that I have served a copy of the foregoing on the following by first class mail and email, this 19th day of August 2026, to:

Maureen A. Carroll, Esq.
Rudolf, Smith, Griffis & Ruggieri
446 Main Street, Suite 1503
Worcester, MA 01608
carroll@rgrnlaw.com

*/s/ Benjamin J. Hinks*
Benjamin J. Hinks

A true copy by photostatic process
Attest:
Asst. Clerk



4933-0551-9558.1

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KRISTEN WHITE<br><br>Plaintiff,<br>v.<br><br>ASSUMPTION UNIVERSITY and GREGORY S. WEINER,<br><br>Defendants. | Civil Action No. 4:26-cv-40200 |

**NOTICE OF REMOVAL FROM STATE COURT**

Pursuant to 28 U.S.C. §1446, *et. seq*., Defendants Assumption University and Gregory S. Weiner (together, "Defendants") hereby give notice of removal of Civil Action No. 2685CV01101 from the Worcester Superior Court Department of the Trial Court of Massachusetts to the United States District Court for the District of Massachusetts. In support of this Notice of Removal, Defendants state as follows:

**BACKGROUND**

1. On July 20, 2026, Plaintiff, Kristen White ("Plaintiff") filed a Complaint against the Defendants in the Worcester Superior Court, Civil Action No. 2685CV01101 (the "State Court Action").

2. Plaintiff asserts claims against Defendants for alleged violations of the Massachusetts Fair Employment Practices Act, M.G.L. c. 151B § 4 *et seq*., the Massachusetts Wage Act, M.G.L. c. 149 § 148, and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*..

3. Attached hereto as Exhibit A are true and correct copies of the Complaint, Civil Action Cover Sheet, Notices of Appearance, Superior Court Endorsement on Plaintiff's Motion to

Appoint Special Process Server, Summonses, and Defendants' Waiver and Acceptance of Service. These documents constitute all the process, pleadings, and orders filed in the State Court Action to date.

**TIMELINESS OF REMOVAL**

4. Plaintiff served the Complaint and Summonses in the State Court Action on Defendants on July 23, 2026.

5. In accordance with 28 U.S.C. § 1446(b), the removal of this action is timely having been accomplished within thirty (30) days from the date on which Plaintiff served Defendants with a copy of the Complaint. 28 U.S.C. § 1446(b).

**VENUE**

6. Under 28 U.S.C. § 1441(a), the United States District Court for the District of Massachusetts is the proper venue for removal because it embraces the place where this action is pending. 28 U.S.C. §§1441(a) and 1446(a).

**JURISDICTIONAL BASIS FOR REMOVAL**

7. Pursuant to 28 U.S.C. § 1441(a), any civil action brought in a state court which the district courts of the United States have original jurisdiction, may be removed by the Defendants, to the district court of the place where such action is pending.

8. Pursuant to 28 U.S.C. § 1331, the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

9. This Court has federal question jurisdiction over this case because Plaintiff has alleged violations of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. (See Exhibit A).

10. This Court has supplemental jurisdiction over the remaining counts in the Complaint pursuant to 28 U.S.C. § 1367 because they are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a).

**PROCEDURAL COMPLIANCE**

11. Defendants have complied with the procedural requirements for removal. In accordance with 28 U.S.C. §1446(a), Defendants have attached copies of all process, pleadings, and orders served upon them. (See Exhibit A). Pursuant to 28 U.S.C. § 1446(d), Defendants are filing with the Worcester Superior Court Department of the Trial Court of Massachusetts, a "Notice of Filing Notice of Removal of State Action to the U.S. District Court for the District of Massachusetts," a copy of which is attached as Exhibit B.

**MISCELLANEOUS ISSUES**

12. By filing this Notice of Removal, Defendants do not waive any defense that may be available to them and specifically reserve the right to assert any defenses and/or objections to which they may be entitled.

WHEREFORE, Defendants request that the State Court Action be removed to this Court.

Respectfully submitted,

ASSUMPTION UNIVERSITY AND
GREGORY S. WEINER,
By Their Attorneys,

*/s/ Benjamin J. Hinks*
Timothy P. Van Dyck (BBO #548347)
Benjamin Hinks (BBO #706662)
BOWDITCH & DEWEY, LLP
75 Federal Street, Suite 1000
Boston, MA 02110
Telephone: 617-757-6500
E-mail: tvandyck@bowditch.com
bhinks@bowditch.com

Dated: August 19, 2026

**CERTIFICATE OF SERVICE**

I, Benjamin J. Hinks, hereby certify that I have served a copy of the foregoing on the following by first class mail and email, this 19th day of August 2026, to:

Maureen A. Carroll, Esq.
Rudolf, Smith, Griffis & Ruggieri
446 Main Street, Suite 1503
Worcester, MA 01608\
carroll@rgrmlaw.com

*/s/ Benjamin J. Hinks*
Benjamin J. Hinks

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

**2685CV01101 White, Kristen vs. Assumption University et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Torts | **FILE DATE:** | 07/20/2026 |
| **ACTION CODE:** | B22 | **CASE TRACK:** | F - Fast Track |
| **DESCRIPTION:** | Employment Discrimination | | |
| **CASE DISPOSITION DATE:** | | **CASE STATUS:** | Open |
| **CASE DISPOSITION:** | Pending | **STATUS DATE:** | 07/20/2026 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil C |

**DCM TRACK**

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 10/19/2026 | |
| Rule 12/19/20 Served By | 11/17/2026 | |
| Answer | 11/17/2026 | |
| Rule 15 Served By | 11/17/2026 | |
| Rule 12/19/20 Filed By | 12/17/2026 | |
| Rule 15 Filed By | 12/17/2026 | |
| Rule 12/19/20 Heard By | 01/19/2027 | |
| Rule 15 Heard By | 01/19/2027 | |
| Discovery | 05/17/2027 | |
| Rule 56 Served By | 06/15/2027 | |
| Rule 56 Filed By | 07/15/2027 | |
| Final Pre-Trial Conference | 11/12/2027 | |
| Judgment | 07/19/2028 | |

**PARTIES**

| Plaintiff | Attorney 710820 |
|---|---|
| White, Kristen<br>446 Main Street<br>Site 1503<br>Worcester, MA 01604 | Maureen A Carroll<br>Rudolf Smith<br>Rudolf Smith<br>446 Main St<br>Suite 1503<br>Worcester, MA 01608<br>Work Phone (508) 425-6330<br>Added Date: 07/20/2026 |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | |
|---|---|
| **Defendant**<br>Assumption University<br>500 Salisbury Street<br>Worcester, MA 01605 | **Attorney** **548347**<br>Timothy P Van Dyck<br>Bowditch and Dewey, LLP<br>Bowditch and Dewey, LLP<br>144 Turnpike Rd<br>Suite 350<br>Southborough, MA 01772<br>Work Phone (617) 757-6536<br>Added Date: 07/27/2026<br>**Attorney** **706662**<br>Benjamin J Hinks<br>Bowditch and Dewey, LLP<br>Bowditch and Dewey, LLP<br>75 Federal St<br>Suite 1000<br>Boston, MA 02110<br>Work Phone (617) 757-6500<br>Added Date: 07/27/2026 |
| **Defendant**<br>Weiner, Gregory S.<br>376 Bailey Road<br>Holden, MA 01520 | **Attorney** **548347**<br>Timothy P Van Dyck<br>Bowditch and Dewey, LLP<br>Bowditch and Dewey, LLP<br>144 Turnpike Rd<br>Suite 350<br>Southborough, MA 01772<br>Work Phone (617) 757-6536<br>Added Date: 07/27/2026<br>**Attorney** **706662**<br>Benjamin J Hinks<br>Bowditch and Dewey, LLP<br>Bowditch and Dewey, LLP<br>75 Federal St<br>Suite 1000<br>Boston, MA 02110<br>Work Phone (617) 757-6500<br>Added Date: 07/27/2026 |

**FINANCIAL SUMMARY**

| | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| | **Total** | **360.25** | **275.00** | **0.00** | **85.25** |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

**INFORMATIONAL DOCKET ENTRIES**

| Date | Ref | Description | Judge |
|---|---|---|---|
| 07/20/2026 | 1 | Civil action cover sheet filed. | |
| 07/20/2026 | 2 | Complaint electronically filed. | |
| 07/20/2026 | 3 | Attorney appearance electronically filed.<br><br>Applies To: Carroll, Esq., Maureen A (Attorney) on behalf of White, Kristen (Plaintiff) | |
| 07/20/2026 | | Demand for jury trial entered.<br><br>Applies To: White, Kristen (Plaintiff) | |
| 07/21/2026 | | Case assigned to:<br>DCM Track F - Fast Track was added on 07/21/2026 | |
| 07/21/2026 | | EDocument sent:<br><br>Tracking Order<br>Sent On: 07/21/2026 10:17:50<br>Notice Sent To: Maureen A Carroll, Esq. carroll@rudolfsmith.com | |
| 07/21/2026 | 4 | Plaintiff Kristen White's Motion to<br>Appoint Special Process Server Under Rule 4C of the Massachusetts Rules of Civil Procedure<br>(EFILED)<br><br>Applies To: White, Kristen (Plaintiff) | |
| 07/22/2026 | | Endorsement on Motion to Appoint Special Process Server (#4.0): ALLOWED<br>Notices mailed 7/23/26<br><br>Judge: Feiner, Hon. Gillian | Feiner |
| 07/23/2026 | | EDocument sent:<br><br>Clerk's Notice (eDoc)<br>Sent On: 07/23/2026 10:04:17<br>Notice Sent To: Maureen A Carroll, Esq. carroll@rudolfsmith.com | |
| 07/27/2026 | 5 | Attorney appearance electronically filed.<br><br>Applies To: Hinks, Esq., Benjamin J (Attorney) on behalf of Assumption University, Weiner, Gregory S. (Defendant) | |
| 07/27/2026 | 6 | Attorney appearance electronically filed.<br><br>Applies To: Van Dyck, Esq., Timothy P (Attorney) on behalf of Assumption University, Weiner, Gregory S. (Defendant) | |

CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**WORCESTER COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 08/11/2026 | 7 | Acceptance of Service of Defendants Assumption University and Gregory S. Weiner<br>(E-FILED)<br><br>Applies To: Assumption University (Defendant); Weiner, Gregory S. (Defendant) |
| 08/19/2026 | 8 | Defendants Assumption University, Gregory S. Weiner's Notice of Removal to Federal Court<br>[E-FILED] |
| 08/19/2026 | | Docket Note: Atty Hinks notified of fees for certified copies on 08/19/26 through email |
| 08/19/2026 | | Docket Note: certified copies mailed on 08/19/26 |
| 09/29/2026 | | Docket Note: Second Set of Certified Copies mailed to Atty Van Dyck on 09/29/26 after call from paralegal stating that first set of certified copies was never received |

A true copy by photostatic process
Attest:
Asst. Clerk